UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **09-20201-CIV-MORENO**

MIAMI METRO MEDIA, LLC,

    Plaintiff,

vs.

CITY OF MIAMI GARDENS,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This cause came before the Court upon the City of Miami Gardens' motion for summary judgment (D.E. No. 36). The Court has considered the papers filed by the parties and the record evidence, and is otherwise fully advised in the premises.

### *Background*

*The Sign Code*

In 2007, the City of Miami Gardens enacted a comprehensive ordinance to regulate the erection of signs within the city. Known as the "Sign Code of City of Miami Gardens," the ordinance identifies and contains specific requirements for the types and designs of signs that may be posted. It also expressly prohibits billboard signs, which are defined as signs that advertise for a commercial business, service, or product not conducted, sold, or offered on the property on which the signs are located. Plaintiff Miami Metro Media applied to erect billboard signs but Miami Gardens denied the applications, stating that the signs "appear[ed] to be for billboard signs which are prohibited...."

*Miami Metro Media's Allegations*

Miami Metro Media filed this action seeking to invalidate the Sign Code in its entirety. Its initial and first amended complaints alleged, among other things, that the Sign Code is unconstitutional because of its outright ban on billboard signs. Miami Gardens moved to dismiss, arguing that Miami Metro Media's alleged injury is not redressable. Specifically, Miami Gardens contends that even if Miami Metro Media could prove that the billboard ban is unconstitutional, it would still not be able to erect its signs because they violate other provisions of the Sign Code that Miami Metro Media failed to challenge, namely size limitations, design requirements, and permit application requirements. In support, Miami Gardens submitted an affidavit from its Zoning Administrator, who attested that each sign violates the Sign Code's maximum limit for total sign area, appears to be for a "pole sign" which violates the Sign Code's requirement that at least 80% of the base be in contact with the ground, and violates the Sign Code's maximum height and width limitations. In addition, the affidavit states that each sign application fails to include a proper sign plan, which requires the applicant to (1) submit a copy of the sign, (2) identify the type of sign, and (3) identify the landscaping plan for each sign. Notably, the Sign Code does not contain a general provision concerning size and design specifications. Rather, the size and design requirements cited by the Zoning Administrator are contained within the myriad subsections of the Sign Code that specify the design standards for the types of signs permitted by the Sign Code, such as monument signs, wall signs, window signs, and drive-thru menu signs, to name a few.

In response to the motion to dismiss, Miami Metro Media filed a second amended complaint. Count I claims that the Sign Code's blanket billboard sign ban is unconstitutional; Count II claims that Miami Gardens' denial of the permits itself was unconstitutional because it relies on portions of the Sign Code that relate to monument signs whereas the signs it seeks to erect are not monument signs (but are pole signs); Count III appears to claim that the Sign Code's exemption for certain types

of signs based on their content (traffic, utility company, special event, political campaign signs) is unconstitutional; and Count IV appears to claim that the Sign Code is unconstitutional because it lacks a time period within which Miami Gardens must approve or deny permit applications and because it gives Miami Gardens unbridled discretion to use the permit requirement to improperly censor speech. Miami Gardens again moved to dismiss, again arguing that Miami Metro Media's alleged injuries were not redressable. The Court issued an order stating that Miami Gardens may be entirely correct but that it could not dismiss Miami Metro Media's claims given the limited record at the time.

*Miami Gardens' Motion for Summary Judgment*

Miami Gardens argues first that Miami Metro Media fails to state a claim under Count II. Miami Gardens contends that contrary to the second amended complaint's allegations that the size, height, and design restrictions cited by the Zoning Administrator relate to only monument signs, they relate to all signs. Miami Gardens then argues that because Miami Metro Media cannot legitimately challenge the size, height, and manner of construction limitations, it lacks standing to challenge all of its other claims. Miami Metro Media responds that the size limitations cited by Miami Gardens simply do not apply to the signs it seeks to erect. Miami Metro Media focuses mainly on the Miami Gardens' actions in enacting the Sign Code, arguing that the evidence demonstrates that Miami Gardens failed to conduct studies supporting the need for the Sign Code and enacted it for improper reasons.

***Discussion***

The Court must first address the standing issue. A plaintiff who invokes the jurisdiction of a federal court bears the burden of demonstrating: (1) an injury in fact, one that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Miami Gardens argues that Miami Metro Media fails to satisfy the third prong because even if Miami Metro Media were to prevail on its claims, its injury would not be redressed because Miami Gardens could still deny the signs based on the Sign Code's size and design restrictions.

Miami Gardens is correct that Miami Metro Media's alleged injuries are not redressable unless it has challenged all aspects of the Sign Code that prevent it from erecting its signs. The Eleventh Circuit recently held that "a plaintiff whose sign permit applications were denied on the basis of one provision in a county's sign ordinance, but which could have been denied on the basis of some alternate, but unchallenged regulation, does not have a redressable injury" and thus lacks Article III standing. *Maverick Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817, 820 (11th Cir. 2008) (citing *KH Outdoor, LLC v. Clay County, Fla.*, 482 F.3d 1299 (11th Cir. 2007)).

In *KH Outdoor*, the plaintiff's applications for permits to erect billboards were denied by the County because the County's sign ordinance prohibited the erection of new billboards. *KH Outdoor*, 482 F.3d at 1301. Plaintiff sued, alleging that the ordinance's billboard prohibition was an unconstitutional content-based regulation. *Id.* The Eleventh Circuit found that the plaintiff lacked standing because its alleged injury would not have been redressed even if it received a favorable decision on its claims. *KH Outdoor*, 482 F.3d at 1303. According to the court, "[a]ny injury KH Outdoor actually suffered from the billboard and offsite sign prohibition [wa]s not redressible because the applications failed to meet the requirements of other statutes and regulations not challenged." *Id.* The court held that the claims failed the redressability test because uncontroverted evidence submitted with the parties' summary judgment papers showed that the proposed signs violated portions of the Florida Statutes and the Florida Building Code that, although not applied by the city to deny the permit applications, could have been applied by the city to deny the applications. *Id.* at 1304.

The Eleventh Circuit confirmed its *KH Outdoor* holding a year later in *Maverick Media Group*, in which it found,

> [T]he *KH Outdoor* redressability analysis is applicable to the case where a county could deny a plaintiff's sign permit applications under an alternative provision of its ordinance that the plaintiff's complaint does not challenge. This is such a case. Just as in *KH Outdoor*, Hillsborough County's ordinance contains height and size limitations for permitted signs. These limitations would have prohibited the erection of Maverick's billboards *independently* of the ordinance's categorical billboard prohibitions... In his Report and Recommendation, the Magistrate found that the evidence submitted by Maverick revealed that it sought permits only for signs measuring 14' x 48', the size of which clearly exceeds the size limitations contained in the excepted off-site directional signs provisions. Therefore, the County could have denied Maverick's applications under an alternative, unchallenged provision of its sign ordinance.

*Maverick Media Group*, 528 F.3d at 821 (internal quotation marks omitted). In addition, Contrary to Miami Metro Media's allegations, it is not enough to challenge only the provisions relied upon by Miami Gardens to deny the applications; Miami Metro Media must challenge all provisions upon which Miami Gardens could have relied. *See Lockridge v. City of Oldsmar*, 273 Fed. Appx. 786, 789, 2008 WL 926399 (11th Cir. 2008) ("[T]hat the City did not deny Mr. Lockridge's applications on the basis of height and size is not dispositive. Because it could have, Mr. Lockridge's injuries are not redressible.").

The question, then, is whether the signs Miami Metro Media seeks to erect could be denied for other reasons. In its motion for summary judgment, Miami Gardens argues that all of the signs have a sign face area of 672 square feet but that, based on Sections IX(B)(13)(b), IX(E)(2), IX(F)(2)(a), IX(G)(2), IX(I)(1)(b), IX(I)(2)(b), IX(L)(2), X(A)(2), X(B)(2), XI(A)(2), and XI(B) of the Sign Code, the maximum sign area for any type of sign is 150 square feet with the exception of monument signs on N.W. 167th Street, where the maximum sign area is 200 square feet. Miami Gardens argues that the signs accordingly violate the sign area limitations for *any* sign permitted within the city.

Miami Gardens next argues that all of the signs are 65 feet tall but that, based on Sections IX(E)(5), IX(G)(3)(a), IX(M)(4), X(A)(3), and XI(A)(4) of the Sign Code, the maximum height for any sign within the city is 15 feet with the exception of signs on N.W. 167th Street, where the maximum height is 20 feet. Miami Gardens argues that the signs accordingly violate the sign height limitations for *any* sign permitted within the city.

Miami Gardens further argues that the signs Miami Metro Media seeks to erect are mounted on a single pole but that, based on Section IX(B)(1), the Sign Code's design standards prohibit pole signs and require all freestanding signs to have at least 80% of the base in contact with the ground.

Courts must generally defer to a municipality's own interpretation of an ordinance, but only if its interpretation is based on a permissible construction. *Southlake Prop. Assocs., Ltd. v. City of Morrow, Ga.*, 112 F.3d 1114, 1119 (11th Cir. 1997). In determining whether Miami Gardens' construction is permissible, the Court must keep in mind the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *U.S. v. Crape*, 603 F.3d 1237, 1243 (11th Cir. 2010).

With this in mind, the Court finds impermissible Miami Gardens' argument that the size limitations found within the various subsections can be construed to apply to *any* and *every* sign within the city. The size limitations relied upon by Miami Gardens are plucked from various provisions within the Sign Code that simply do not relate to the type or design of sign that Miami Metro Media seeks to erect. For instance, Section IX(B)(13)(b) relates solely to monument signs with automatic changeable copy. Sections IX(E)(2) and IX(E)(5) relate solely to directional and information signs. Section IX(F)(2)(a) relates solely to window signs. Sections IX(G)(2) and IX(G)(3)(a) relate solely to entrance feature signs. Sections IX(I)(1)(b) and IX(I)(2)(b) relate solely to flags. Section IX(L)(2) relates solely to theaters, playhouses, and other civic or cultural establishments. Sections X(A)(2) and X(A)(3) relate solely to monument signs along principal

arterial and minor arterial corridors. Section X(B)(2) relates solely to window signs along principal arterial and minor arterial corridors. Sections XI(A)(4) and XI(B) relate solely to monument signs along collector and all other rights-of-way. And Section IX(M)(4) relates solely to drive-thru menu board signs.

It is simply not credible for Miami Gardens to maintain, for example, that the restrictions found within the subsections of the Sign Code addressing drive-thru menu boards apply to the signs Miami Metro Media seeks to erect. Miami Gardens knew how to be specific when it wanted to, and if it wanted a general size, height, or area limitation for *any* and *every* sign within the city, it could have easily provided for it in the Sign Code. The only permissible construction based on the specific placement of these size, height, and area restrictions is that they apply to only the types of signs addressed by the subsections in which they are located. Miami Gardens accordingly cannot cite these size and area limitations as grounds for denial of Miami Metro Media's signs.

On the other hand, the Sign Code makes clear that only the types of signs expressly authorized are permitted, and it goes to great lengths to list and describe the specific types and designs of signs that are permitted. But the type and design of sign that Miami Metro Media seeks to erect--a freestanding sign supported by a pole[1]--is simply not authorized by the Sign Code. Thus, even if Miami Metro Media were correct that the billboard ban is unconstitutional, it still would not be able to erect its signs. It would be different if the signs Miami Metro Media seeks to erect were of a type or design authorized by the Sign Code or if Miami Metro Media challenged the Sign Code's prohibition on the type or design of the signs it seeks to erect. But that is not the case.

---

[1] The sign permit applications and the deposition testimony of Santiago Echemendia, one of Miami Metro Media's managing members, make this clear. So does Miami Metro Media's second amended complaint, in which it alleges that the signs it seeks to erect are "pole signs." And aside from a general denial in its statement of facts, Miami Metro Media has not argued or offered any evidence to support that the signs it seeks to erect are of a type or design permitted by the Sign Code.

Miami Metro Media's alleged injuries are thus not redressable, and it lacks standing to challenge the Sign Code on the grounds that it unconstitutionally bans billboards, exempts certain types of signs, grants Miami Gardens unbridled discretion, and fails to contain a time frame for a decision.[2] Accordingly, it is ADJUDGED that:

1. Miami Gardens' motion for summary judgment (D.E. No. 36) is GRANTED on the ground that Miami Metro Media lacks standing for want of redressability.

2. This case is CLOSED and any pending motions are DENIED as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of June, 2010.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to Counsel of Record

---

[2] The Court notes that since Miami Gardens notified Miami Metro Media of its decision within just a couple of weeks, Miami Metro Media cannot claim it was injured by the lack of a time frame. Accordingly, Miami Metro Media also lacks standing to make this challenge. In addition, although the Court need not reach this issue, Miami Gardens cites as an additional ground for denial of the sign permits Miami Metro Media's failure to submit required information with the application. The Court notes that in denying Miami Metro Media's sign applications based on substantive provisions of the Sign Code, Miami Gardens may have waived its right to claim that the applications themselves were defective. If Miami Gardens did not have the information it needed to make a substantive determination regarding the signs, a logical response would have been to deny the applications for failure to submit the proper information. By making a substantive determination, however, Miami Gardens may have in effect conceded that it had the requisite information. If that is the case, it should not be permitted to rely on this as a ground for denying the sign applications.